UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RONALD MALLAY,

                               Petitioner,          17-CV-3781 (SJ)
                                                  02-CR-0778 (SJ)

     v.

                                      **MEMORANDUM**
UNITED STATES OF AMERICA,           **AND ORDER**

                               Respondent.
-------------------------------------------------------------------x
APPEARANCES:

RONALD MALLAY
Reg. No. 30475-054
FCI Loretto Low
P.O. Box 1000
Cresson, PA 16630
*Petitioner Pro Se*

BREON PEACE
United States Attorney for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:    A.U.S.A. Kayla Bensing
*Attorney for Respondent United States of America*

**JOHNSON**, Senior District Judge:

       Petitioner Ronald Mallay was convicted of racketeering, racketeering

conspiracy, three counts each of conspiracy to commit murder- for-hire and

murder-for-hire, two counts of conspiracy to commit murder in aid of

racketeering, and one count each of murder in aid of racketeering, mail fraud, conspiracy to commit mail fraud, and conspiracy to commit money laundering.  Although most of the criminal conduct occurred in the United States, two of the murders and some of the arrangements for those murders occurred in Guyana.  Mallay now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentences imposed for these offenses, arguing that his conviction for the foreign conduct violated the presumption against extraterritoriality.  He also argues that he was indicted for certain offenses after the five-year statute of limitations had run, that the prosecution engaged in misconduct by indicting him on the time-barred charges, that the Court erred in failing to charge the jury on the statute-of-limitations defense, and that both his trial counsel and appellate counsel provided ineffective assistance by failing to raise the extraterritoriality and statute-of-limitations arguments.  For the reasons set forth below, Mallay's arguments are meritless and his § 2255 motion is denied in its entirety.

## BACKGROUND

This case involves a scheme in which Mallay and his co-defendants—including Richard James, an insurance agent—insured the lives of others, then murdered them after the policies' contestability period passed and profited from the insurance proceeds.  The facts of this case

2

were discussed in some detail in other opinions authored by this Court. Although familiarity with the Court's previous opinions is assumed, the Court will briefly summarize the facts for the convenience of the reader.

In 1991, Mallay was convicted of stealing mail in the course of his employment as a letter carrier for the United States Postal Service and was sentenced to 15 months' imprisonment.  Believing that his brother-in-law, Vernon Peter, had assisted in the investigation that resulted in his conviction, he arranged for Peter's murder.  He announced his intentions to his sister—Peter's wife, Betty Peter—telling her to stay up-to-date on the insurance policies covering Peter's life because he intended to get even.

After his release from prison and while still on supervised release, Mallay offered Davindras Das $10,000 to murder Peter and gave Das $500 to purchase a gun.  On July 28, 1993, Camuldeen Allie, one of the men Das had recruited as a lookout, shot Peter several times in the head outside Peter's home in Woodside, New York.  Mallay's sister subsequently collected $400,000 in insurance proceeds, from which she loaned Mallay at least $60,000.

In 1993, Mallay and James went to the New York home of Mallay's girlfriend and convinced her to take out life insurance policies on her father, Alfred Gobin.  In January 1996, Gobin was murdered while on a visit

3

to Guyana.  Both Mallay and his girlfriend received insurance proceeds following Gobin's death.

Mallay and James engaged in a similar scheme aimed at Basdeo Somaipersaud, the heavy-drinking roommate of one of James' friends.  In October 1994, without Somaipersaud's knowledge, James took out a $100,000 policy on Somaipersaud, naming James' sister as the beneficiary.  In the fall of 1997, Mallay approached Kenrick Hassan, a member of Mallay's extended family, and offered him $10,000 to kill Somaipersaud.  Although Kenrick declined the offer, Somaipersaud was found dead in a Queens park in January 1998 from a combination of alcohol and chlorpromazine.  Mallay's girlfriend and wife, among others, received insurance proceeds from the Somaipersaud policy.

In October 1996, James negotiated and witnessed two $250,000 insurance policies on the life of Mallay's nephew, Hardeo Sewnanan.  The policies were allegedly purchased by one William Mallay, but the purchaser used the same address as petitioner and Mallay's wife and sister were named as beneficiaries.  In 1999, Mallay again approached Kenrick Hassan and asked him to murder Sewnanan, who was then living in Guyana.  Hassan declined but referred Mallay to his brother, Derick Hassan, who lived in Guyana.  Mallay traveled to Guyana to meet Derick,

4

identified Sewnanan to Derick, and gave him $10,000.  Although Derick

later backed out of the deal, Sewnanan died in Guyana of poisoning on

January 8, 1999, and Mallay received $400,000 from the Sewnanan policies.

Derick Hassan subsequently became a confidential informant for the

Government.  He met with Mallay while wearing a hidden recording

device, pretending to be interested in working for the Mallay Enterprise.

Mallay admitted that he hired people in Guyana to kill Sewnanan.

The Mallay Enterprise continued until 2002.  Mallay went to a

Guardian Life Insurance office in January 2002 and falsely represented to an

insurance agent that an individual named Devadas Harichand was his

cousin.  Mallay purchased a life insurance policy on Harichand and named

his son, Donald Mallay, as the beneficiary.  Mallay also provided false

phone numbers and addresses for Harichand.

The Indictments

Mallay was first charged in connection with the above-described

conduct in a superseding indictment filed in September 2002.  (ECF Doc.

No. 16.)  That two-count indictment—which named both Mallay and James

as defendants—charged each defendant with a single count of conspiring to

commit murder-for-hire in violation of 18 U.S.C. § 1958.

5

Approximately one year later, the Government filed a six-count second superseding indictment, (ECF Doc. No. 51), which again named both Mallay and James as defendants.  This indictment charged the defendants, together with others, with three separate conspiracies to commit murder-for-hire and murders-for-hire in violation of 18 U.S.C. § 1958.  The first two counts related to Somaipersaud, the next two counts related to Sewnanan, and the final two counts related to a John Doe.

On September 9, 2004, the Government filed a third superseding indictment (the "S-3 Indictment").  (ECF Doc. No. 93.)  This indictment named not only Mallay and James but two new defendants: Betty Peter and her son, Baskanand Motillal.  It contained nineteen causes of action, fourteen of which named Mallay.

The first count charged Mallay, James, and Motillal with racketeering in violation of 18 U.S.C. § 1962(c).  That count listed ten racketeering acts, the first eight of which involved Mallay.  The first three racketeering acts charged Mallay and others with mail fraud.  Racketeering Act Four charged that Mallay, together with others, engaged in a money laundering conspiracy from January 1991 to October 2003.  The next four racketeering acts each charged two state-law offenses:  conspiring to commit the Class A felony of murder in the second degree in violation of

6

New York Penal Law §§ 105.15 and 125.25(1), and acting in concert with others to commit murder in the second degree in violation of New York Penal Law §§ 20.00 and 125.25(1).  Each of those four counts pertained to a different victim; Racketeering Act Five related to Peter, Racketeering Act Six related to Gobin, Racketeering Act Seven related to Sewnanan, and Racketeering Act Eight related to Somaipersaud.  The indictment provided that these four racketeering acts could be established by proving either the conspiracy or the murder.

The second count charged all defendants other than Peter with racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  The third and fourth counts charged Mallay alone with conspiracy to commit murder-for-hire and the murder-for-hire, respectively, of Gobin.  Count Five charged Mallay and James with conspiring to murder Sewnanan in aid of racketeering, a violation of 18 U.S.C. § 1959(a)(5).  Counts Six and Seven charged Mallay and James with conspiracy to commit murder-for-hire and the murder-for-hire, respectively, of Sewnanan.  Counts Eight and Nine charged Mallay and James with conspiracy to commit the murder in aid of racketeering and the murder in aid of racketeering, respectively, of Somaipersaud.  Counts Ten and Eleven charged Mallay and James with

P-049

conspiracy to commit murder-for-hire and the murder-for-hire, respectively, of Somaipersaud.

Mallay was not named in Counts Twelve and Thirteen, but was named in the next three counts. Count Fourteen charged all four defendants with conspiring to commit mail fraud between January 1991 and October 2003. Count Fifteen charged Mallay alone with committing mail fraud in 2002. Finally, Count Sixteen charged all four defendants with conspiring to launder money between January 1991 and October 2003. Mallay was not named in the final three counts of the S-3 Indictment.

<u>The Trial and Verdict</u>

Mallay went to trial on the S-3 Indictment in 2007 and was found guilty of all fourteen counts against him. According to the Verdict Form completed by the jury foreman, (ECF Doc. No. 541), the jury also found that the prosecution had proved that Mallay had committed each of the eight racketeering acts of which he was accused.

Although Mallay was eligible to receive the death penalty for five of the fourteen counts, the jury was unable to reach a unanimous verdict with respect to the appropriate penalty. In 2009, the Court sentenced Mallay to 60 months' imprisonment for the mail fraud conspiracy, to 120 months each for the murder in aid of racketeering and one of the two counts of

8

conspiracy to commit murder in aid of racketeering, to 240 months each for the mail fraud and conspiracy to commit money laundering, and to life imprisonment for each of the remaining nine offenses. The Court ran all sentences concurrently for a total of life imprisonment.

### Post-Conviction Motions and Direct Appeal

Following his conviction, Mallay moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), arguing that the evidence was legally insufficient to support his conviction. He also moved, along with co-defendant James, for a new trial pursuant to Federal Rule of Criminal Procedure 33. The latter motion was based on a July 2008 letter from Allie which implied that Peter's wife paid Allie and others $7,000 to shoot Peter but which did not recant Allie's trial testimony implicating Mallay and James in Peter's murder. The Court denied both motions. *See United States v. James*, No. 02-CR-778 (SJ), 2009 WL 763612, at *5 (E.D.N.Y. Mar. 18, 2009).

Mallay raised eight separate issues on direct appeal, none of which are raised in the § 2255 motion which is at issue herein. On March 28, 2013, the Second Circuit affirmed Mallay's conviction in all respects. *United States v. James*, 712 F.3d 79, 87 (2d Cir. 2013). Mallay then petitioned the

9

United States Supreme Court for a writ of certiorari, but that petition was denied on May 27, 2014.  *United States v. James*, 572 U.S. 1134 (2014).

<u>The Instant Motion</u>

On June 19, 2017—more than three years after certiorari was denied—Mallay, proceeding *pro se*, filed the instant motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 by placing a properly addressed, postage-paid envelope containing the motion in his prison mailbox.  *See* Certificate of Service (ECF Doc. No. 725, p. 103.)[1] Mallay's Memorandum in support of the motion ("Mallay's Memo") raises four points, though the third point contains two related but separate arguments.

First, relying on the Supreme Court's June 20, 2016, decision in *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325 (2016), Mallay argues that he was improperly convicted of "foreign conduct" in violation of the presumption against extraterritoriality.  Although *RJR Nabisco* addressed only the question of whether RICO can apply extraterritorially, Mallay's Memo seeks to vacate not only Mallay's convictions for racketeering and

---

[1] This citation refers to the page number assigned to the document by the Electronic Case Filing system.

10

racketeering conspiracy but also all convictions arising from conduct that occurred overseas.

Second, Mallay argues that the first eleven counts of which he was indicted must be dismissed on statute-of-limitations grounds. In making this argument, Mallay assumes that a five-year limitations period applies to all counts. He concedes that one of the racketeering acts charged in Count One—Racketeering Act Four—allegedly occurred within the five years before he was indicted, but he argues that this is insufficient to render the indictment on that count timely. He also argues the crimes charged in the next ten counts are alleged to have been committed more than five years before he was indicted for those offenses. Mallay concedes that one of the overt acts alleged in Count 14 (mail fraud conspiracy) and the acts alleged in Counts 15 and 16 (mail fraud and money laundering conspiracy) were committed within five years of the S-3 Indictment.

The third point contains two arguments that are closely related to the second. First, Mallay argues that it was prosecutorial misconduct to indict him on the time-barred charges. Second, Mallay argues that the Court erred in failing to instruct the jury on the statute-of-limitations issue.

In the fourth point, Mallay argues that both his trial counsel and his appellate counsel provided ineffective assistance of counsel. Citing to

P-049

*North South Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996), which noted that RICO "is silent as to any extraterritorial application," Mallay argues that defense counsel could and should have raised the extraterritorial argument even prior to the decision in *RJR Nabisco*. In addition, Mallay argues that counsel were ineffective in failing to assert the statute-of-limitations defense.

The Government's letter responding to Mallay's Memo (the "Response") argues that all of Mallay's arguments except for the extraterritoriality challenge to the RICO convictions are time-barred by § 2255's one-year period of limitations. The Government nonetheless addresses the merits of both the extraterritoriality and statute-of-limitations arguments. The Government does not specifically address the merits of the prosecutorial misconduct and ineffective assistance arguments since these are predicated on the first two arguments.

## DISCUSSION

The instant motion is brought pursuant to 28 U.S.C. § 2255, which provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

12

authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." *Id.* § 2255(a). Section 2255 claims are subject to a one-year period of limitation which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2255(f). A judgment of conviction becomes final for purposes of § 2255(f)(1) when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Rosa v. United States*, 785 F.3d 856, 859 (2d Cir. 2015) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)).

In this case, Mallay's conviction became final on May 27, 2014, when the Supreme Court denied his petition for a writ of certiorari. *See James*, 572

13

U.S. at 1134.  Mallay did not file the instant motion until June 19, 2017—

more than three years later.  Since the "one-year period is a statute of

limitations rather than a jurisdictional bar," courts "may equitably toll the

period."  *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)

(quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).  But to establish a

basis for equitable tolling, "a petitioner 'must show that extraordinary

circumstances prevented him from filing his petition on time,' and … 'must

have acted with reasonable diligence throughout the period he seeks to

toll.'"  *Id.* (quoting *Smith*, 208 F.3d at 17).

Alternatively, "a credible showing of actual innocence may allow a

prisoner to pursue his constitutional claims … on the merits

notwithstanding the existence of a procedural bar to relief."  *McQuiggin v.

Perkins*, 569 U.S. 383, 392 (2013).  In this context, "'actual innocence' means

factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523

U.S. 614, 623–24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Mallay's Memo does not establish a basis for equitable tolling or

Mallay's actual innocence of any of the crimes of which he was convicted.

Rather, in arguing that his § 2255 motion is timely, Mallay's Memo relies on

the Supreme Court's June 20, 2016, decision in *RJR Nabisco*, asserting that

this decision recognized a new right and, under § 2255(f)(3), "retroactively

14

opens" the "timely door" to his claims.  (Mallay's Memo at 28.)  Mallay's

Memo also asserts that *RJR Nabisco* "is retroactive on collateral review," (*id.*

at 29), but does not cite any authority for this proposition.

In its Response, the Government does not argue that *RJR Nabisco* is

not retroactive.   Rather, the Government argues that "[e]ven assuming that

case established a right newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review—an issue about which

the Second Circuit has not yet spoken—only his claims relating to

extraterritorial application would be timely."  (Response at 4.)

To the extent that the Government is arguing that all of Mallay's

extraterritoriality arguments except those relating to the RICO convictions

are untimely, the Court agrees.  *RJR Nabisco* addressed two questions:

whether "RICO's substantive prohibitions, contained in § 1962, apply to

conduct that occurs in foreign countries" and whether "RICO's private

right of action, contained in § 1964(c), appl[ies] to injuries that are suffered

in foreign countries."  *RJR Nabisco*, 579 U.S. at 335.  *RJR Nabisco* did not

establish any new rights or rules relating to the extraterritorial application

of other criminal statutes.  Indeed, in analyzing whether predicate offenses

listed in the RICO statute had extraterritorial application, *RJR Nabisco*

utilized the two-step framework reflected in *Morrison v. National Australia*

P-049

*Bank Ltd.*, 561 U.S. 247 (2010), and *Kiobel v. Royal Dutch Petroleum Co.*, 569

U.S. 108 (2013)—cases decided before Mallay's conviction became final.

Accordingly, even assuming that *RJR Nabisco* is retroactively applicable to

cases on collateral review, that case does not establish a basis for extending

the start of the one-year limitations period relating to § 2255 claims other

than those pertaining to Mallay's convictions for racketeering and

racketeering conspiracy.

<u>The Extraterritoriality Argument relating to the RICO Counts</u>

"It is a basic premise of our legal system that, in general, 'United

States law governs domestically but does not rule the world.'" *RJR Nabisco*,

579 U.S. at 335 (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454

(2007)).  This premise is reflected in a rebuttable presumption against

applying United States laws to conduct that occurs in foreign countries: the

presumption against extraterritoriality.  Under this presumption, federal

laws have only domestic application "[a]bsent clearly expressed

congressional intent to the contrary."  *Id.*

The Supreme Court has developed a two-step framework for

analyzing extraterritoriality issues.  As explained in *RJR Nabisco*:

> At the first step, we ask whether the presumption against
> extraterritoriality has been rebutted—that is, whether the

16

> statute gives a clear, affirmative indication that it applies
> extraterritorially. … If the statute is not extraterritorial, then at
> the second step we determine whether the case involves a
> domestic application of the statute, and we do this by looking
> to the statute's "focus."

*Id.* at 337. "The focus of a statute is the objec[t] of [its] solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protec[t] or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (internal quotations marks and citation omitted). "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 579 U.S. at 337.

Before analyzing whether and when a defendant's conduct in foreign countries can violate RICO, it is necessary to examine the RICO statute itself. RICO targets four different ways in which a "pattern of racketeering activity" may be used to infiltrate, control, or operate "a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *See* 18 U.S.C. § 1962. As summarized in *RJR Nabisco*:

17

> Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Finally, § 1962(d) makes it unlawful to conspire to violate any of the other three prohibitions.

*RJR Nabisco*, 579 U.S. at 330. The first two counts of the S-3 Indictment accused Mallay of violating sections 1962(c) and 1962(d), respectively.

RICO defines the term "racketeering activity" to mean any of the dozens of state and federal offenses which are listed in 18 U.S.C. § 1961(1). These offenses include any act "indictable" under specified federal statutes, *id.* §§ 1961(1)(B)–(C), (E)–(G); certain crimes "chargeable" under state law, *id.* § 1961(1)(A); and any offense involving bankruptcy or securities fraud or drug-related activity that is "punishable" under federal law, *id.* § 1961(1)(D). These offenses are known as "predicates" or predicate offenses," though they are generally referred to as "racketeering acts" in indictments. A "pattern of racketeering activity" is a series of related predicates that together demonstrate the existence or threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229,

239 (1989).  Section 1961(5) specifies that a "pattern of racketeering activity"

requires at least two predicates committed within 10 years of each other.

In *RJR Nabisco*, the Supreme Court held that "§ 1962 applies to

foreign racketeering activity — but only to the extent that the predicates

alleged in a particular case themselves apply extraterritorially."  *RJR*

*Nabisco*, 579 U.S. at 339.  In other words, "[a] violation of § 1962 may be

based on a pattern of racketeering that includes predicate offenses

committed abroad, provided that each of those offenses violates a predicate

statute that is itself extraterritorial."  *Id.*

In this case, the Government's evidence established a pattern of

racketeering activity based on conduct that occurred exclusively within the

United States.  Six of the eight racketeering acts with which Mallay was

charged involved exclusively domestic conduct.  The Verdict Form

establishes that jury found that the Government had proved all eight

racketeering acts.  Since the jury only needed to find that Mallay committed

two racketeering acts within ten years to establish a pattern of racketeering

activity, *see* 18 U.S.C. § 1961(5), the Court could uphold the RICO conviction

even if two of the racketeering acts were based on foreign conduct.

In fact, the two predicates that involved foreign conduct —

Racketeering Act Six, relating to the murder of Gobin, and Racketeering Act

P-049

Seven, relating to the murder of Sewnanan—were established by Mallay's domestic conduct, even though the murders themselves occurred in Guyana. Both of these two racketeering acts accused Mallay of two separate state-law offenses: conspiracy to commit murder in violation of New York Penal Law §§ 105.15 and 125.25(1) and murder under an acting-in-concert theory in violation of New York Penal Law §§ 20.00 and 125.25(1). Both of these racketeering acts could be made out by proving either that Mallay participated in the conspiracy or that he acted in concert to cause the murder.

To prove the conspiracy, the Government had to establish that Mallay, acting with the intent to murder, "agreed with one or more persons to engage in or cause the performance of conduct constituting the murder" and that Mallay or a co-conspirator committed at least one overt act in furtherance of the conspiracy. *See* N.Y. Crim. Jury Instructions, Penal Law § 105.15 (available at https://nycourts.gov/judges/cji/2-PenalLaw/105/art105hp.shtml.) The trial evidence established that while in New York, Mallay and James agreed to cause the murders of Gobin and Sewnanan. In addition, Mallay committed overt acts in furtherance of those agreements while in this state. Thus, although Gobin and Sewnanan were murdered in

20

Guyana, Mallay's domestic acts provided the basis for his conviction of

Racketeering Acts Six and Seven.

<u>The Statute-of-Limitations Argument</u>

Mallay's statute-of-limitations argument is not only barred by the

one-year statute of limitations but also procedurally barred because Mallay

failed to raise it on direct appeal.  A defendant is generally "barred from

collaterally challenging a conviction under § 2255 on a ground that he failed

to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir.

2011) (citing *Yick Man Mui v. United States*, 614 F.3d 50, 53–54 (2d Cir. 2010);

*Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007)).  There are two

exceptions to the rule that are relevant here.  First, the procedural bar does

not apply "if the defendant establishes (1) cause for the procedural default

and ensuing prejudice or (2) actual innocence." *Thorn*, 659 F.3d at 231

(citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Second, "an

ineffective-assistance-of-counsel claim may be brought in a collateral

proceeding under § 2255, whether or not the petitioner could have raised

the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504

(2003).

As noted above, Mallay has not established his actual innocence of

any of the crimes of which he was convicted.  In addition, although Mallay

P-049

argues that ineffective assistance caused the failure to raise these claims, he cannot establish prejudice because the statute-of-limitations claims are without merit.

"The federal criminal code contains two general statute-of-limitations provisions." *United States v. Payne*, 591 F.3d 46, 56 (2d Cir. 2010). Generally, the limitations period for non-capital offenses is five years. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.")  However, "[a]n indictment for any offense punishable by death may be found at any time without limitation." *Id.* § 3281. "[F]or the purposes of the indefinite limitations period provided by 18 U.S.C. § 3281, an offense is 'punishable by death' when the statute 'authorizes death as a punishment,' regardless of whether the particular defendant is death eligible." *Matthews v. United States*, 622 F.3d 99, 103, n. 1 (2d Cir. 2010) (citing *Payne*, 591 F.3d at 59).

Although Mallay was death eligible with respect to only five of the fourteen counts of which he was convicted, nine of the counts authorized death as a punishment.  First, 18 U.S.C. § 1958(a) authorizes the death penalty for anyone who commits murder-for-hire (charged in Counts Four,

22

Seven, and Eleven of the S-3 Indictment) or who conspires to commit that crime (charged in Counts Three, Seven, and Ten). Similarly, 18 U.S.C. § 1959(a)(1) makes both murder in aid of racketeering (charged in Count Nine) and conspiracy to commit such a murder (charged in Counts Five and Eight) punishable by death. Accordingly, the statute-of-limitations argument could not be made as to these nine counts.

The five-year statute of limitations applies to both the RICO count (Count One of the S-3 Indictment) and the RICO conspiracy count (Count Two), though the point at which the five-year period commences differs for the two counts. A "substantive RICO charge is barred by limitations as to any defendant unless that defendant committed a predicate act within the five-year limitations period." *United States v. Yannotti*, 541 F.3d 112, 123 (2d Cir. 2008) (quoting *United States v. Salerno*, 868 F.2d 524, 534 (2d Cir. 1989)) (emphasis omitted). The limitation period for a RICO conspiracy "does not begin to run until the accomplishment or abandonment of the objectives of the conspiracy." *United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987).

In this case, Mallay concedes that the money laundering conspiracy (Racketeering Act Four in Count One) occurred within the five years before the S-3 Indictment was filed. (Mallay's Memo at 4.) Accordingly, there

23

does not appear to be any basis for arguing that Count One was time-barred.

With respect to Count Two, the racketeering conspiracy was still ongoing as of January 2002, when Mallay falsely represented that he was related to one Devadas Harichand and took out an insurance policy on Harichand's life which named Mallay's son as the beneficiary. Since the S-3 Indictment was filed in September 2004, the statute-of-limitations defense was not available with respect to Count Two, either.

The five-year statute of limitations also applies to Counts Fourteen, Fifteen, and Sixteen—the last three of the fourteen counts on which Mallay was convicted. However, Mallay concedes that these three counts charged conduct which occurred within the five-year statute of limitations. (Mallay's Memo at 9–10.)   Accordingly, Mallay was not prejudiced by counsel's failure to raise the statute-of-limitations defense.

Prosecutorial Misconduct and Charge Error

The two arguments raised in the third point of Mallay's Memo are both premised on the meritless statute-of-limitations argument. Specifically, Mallay argues that it was prosecutorial misconduct to indict him on the time-barred charges and that the Court erred in failing to instruct the jury on the statute-of-limitations issue. As discussed above,

24

none of the counts in the S-3 Indictment were time-barred, so these arguments are without merit.

The Ineffective Assistance Argument

To establish ineffective assistance of trial counsel, a defendant "must show, not only that his counsel's representation was fundamentally defective, but also that, but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "*Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." *Id.* (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985)).

To the extent that Mallay is arguing that his trial counsel and appellate counsel provided deficient representation because they failed to raise the extraterritoriality issue, that argument is meritless.  First, as explained above, the racketeering and racketeering conspiracy counts were proved based entirely on domestic conduct.  Advancing this argument would not have affected the outcome of the case.

Trial and appellate counsel also could not have raised the extraterritoriality argument with respect to the other five counts pertaining

25

to Gobin and Sewnanan.  First, the conspiracies to commit these murders (Counts Three, Five, and Six of the S-3 Indictment) occurred in the United States.  In addition, the murder-for-hire statute, 18 U.S.C. § 1958, applies extraterritorially.  The statute provides for criminal penalties for anyone who "travels in or causes another … to travel in interstate or *foreign commerce*, or uses or causes another … to use the mail or any facility of interstate or *foreign commerce*, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value …."  18 U.S.C. § 1958(a) (emphasis added). Thus, by its terms, the statute applies to persons who travel internationally with the intent of arranging a murder that violates domestic laws, even if the murder is committed overseas.  *See, e.g.*, *United States v. Samia*, No. 13-CR-521 (LTS), 2017 WL 980333, at *1 (S.D.N.Y. Mar. 13, 2017) (reinstating murder-for-hire charges against defendants who traveled in foreign commerce in connection with the murder of a non-U.S. national in the Philippines).  Accordingly, defense counsel could not have raised the extraterritoriality argument with respect to the murder-for-hire counts (Counts Four and Seven of the S-3 Indictment).

26

In addition, as discussed above, neither trial counsel nor appellate counsel had any basis for making statute-of-limitations arguments. Since Mallay has not established that either trial or appellate counsel provided deficient representation, his ineffective assistance claim is without merit.

## CONCLUSION

For the reasons set forth above, Mallay's motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety. The Clerk of Court is directed to enter judgment dismissing Case No. 17-CV-3781 (SJ) and to mail a copy of the judgment and this Memorandum and Order to Mallay. Because Mallay has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated: Dec. 9        , 2021
      Brooklyn, New York     Sterling Johnson, Jr., U.S.D.J.

27

P-049